G.J. ELDRIDGE, et al., Plaintiffs,

v.

Ronald A. BOUCHARD, et al., Defendants.

Civ. A. No. 85–0042–A.

United States District Court, W.D. Virginia, Abingdon Division.

Oct. 31, 1985.

Robert M. Galumbeck, Tazewell, Va., for plaintiffs.

W.A. McFarlane, L.L. Hopkins, Jr., Malcolm R. West, Asst. Attys. Gen., Richmond, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This case is before the court on defendants' motion to dismiss pursuant to Fed.R. Civ.P. 12(b)(6) and/or motion for summary judgment, Fed.R.Civ.P. 56, and on defendants' recent motion to abstain. Plaintiffs brought this action seeking declaratory and injunctive relief and monetary damages against the named defendants jointly and severally as individuals and in their official capacities. Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1988 and the Fourteenth Amendment to the United States Constitution, and invoke the jurisdiction of this court under 28 U.S.C. § 1343. For the reasons stated below, this court overrules defendants' motion to abstain; overrules the motion for summary judgment as to plaintiffs' § 1983 claim; and grants summary judgment for defendants on the § 1985(3) claim. Venue is proper in this court.

### I.

The one hundred thirty-three plaintiffs in this action are or have been troopers for the Virginia State Police in Division Four. The state is divided into seven geographical regions known as divisions. The basis for plaintiffs' suit is that troopers in Northern Virginia's Seventh Division are paid a salary differential in addition to their base pay while troopers in the Fourth Division in

Southwestern Virginia do not receive any salary differential to supplement their base pay. The crux of plaintiffs' argument is that the decision to pay the salary differential only to those troopers in Division Seven is arbitrary, without any rational relationship to legitimate state interests and as such is an unconstitutional denial of their rights to equal protection and due process under the Fourteenth Amendment, and that defendants' actions violate §§ 1983 and 1985(3). (In Plaintiffs' Brief in Opposition to Motion to Dismiss and/or for Summary Judgment at page 9, they stated that the complaint alleges violations of only §§ 1983 and 1985(3).)

Defendants point to the fact that the Virginia General Assembly, by Joint Resolution in 1973, authorized a private firm to conduct a study of salaries paid to state employees compared to salaries of private sector employees in comparable occupations. Based on the results of this study, it was determined that salaries in Northern Virginia were generally higher than those in Southwestern Virginia. The decision to pay the salary differential to Northern Virginia State Troopers was premised on the theory that it was necessary in order for the state to effectively compete for qualified personnel with the private security agencies in the area. It was determined that troopers in Division Seven should be paid a differential which would make their salaries on a par with the salaries paid to employees of private security agencies. The intended effect was to keep troopers from leaving state employment in order to work with the higher paying private security agencies. The defendants specifically stated that this differential was not based on cost of living. (Brief Supporting Motion to Dismiss and/or Summary Judgment, p. 2.).

## II.

The issue is whether the defendants arbitrarily and without legislative authorization paid an unjustified salary differential only to Northern Virginia state troopers in Division Seven. The dispute centers around the geographical classification of state troopers in light of state statutes concerning the salary to be paid to all state troopers, as state employees, and the justification and implementation of the practice of paying the differential only to Division Seven troopers. The defendants have raised three major points: lack of subject matter jurisdiction; failure to state a claim upon which relief can be granted, and improper venue. Their main arguments are that the Eleventh Amendment bars this suit and that plaintiffs have made only conclusory and insufficient allegations.

Because the parties have submitted materials in addition to their pleadings, this court will treat defendants' preliminary motion as one for summary judgment. See *Gay v. Wall*, 761 F.2d 175 (4th Cir.1985). Upon a motion for summary judgment the moving party has the burden of clearly establishing the lack of any triable factual issue. *See* 6–Pt. 2 Moore's Federal Practice ¶ 56.15[6] (2d ed. 1985). Pursuant to Rule 56, the court will examine the pleadings, affidavits and other materials in a light more favorable to the nonmoving party. This court must determine whether defendants have demonstrated that there are no genuine issues of material fact involved thus entitling them to judgment as a matter of law, or whether there is a genuine need for trial.

## III.

Before addressing the motion for summary judgment, this court will dispose of defendants' motion to abstain and request to stay this action pending resolution in state court of issues allegedly involving clarification of state law. Defendants maintain that abstention is the proper course for this court to follow based on the *Pullman* doctrine and similar cases. This court does not disagree with the law cited by defendants, however, this case involves neither the interpretation of ambiguous state statutes nor pending state court or administrative proceedings.

In *Stewart v. Hunt*, 598 F.Supp. 1342, 1348–49 (E.D.N.C.1984), a district court re-

cently summarized the three generally recognized categories of abstention as articulated in *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1945). The court stated that the *Pullman* doctrine applies "where there are federal constitutional issues which might be mooted by state court determination of relevant state law.... The state issue must exhibit the qualities of uncertainty and ambiguity ... *Pullman* abstention is inappropriate when the most important issues of law presented are federal, not state issues." (citations omitted). Under *Younger* abstention comity is the central concern and "abstention was held to be appropriate only where: (1) there was a pending state proceeding (2) which was criminal in nature and (3) no unusual circumstances counseling against abstention were present." (The *Younger* doctrine has been modified to cover civil actions, but only where ongoing state proceedings are initiated before any proceedings on the merits have taken place in federal court. *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984).) The third type of abstention, enunciated in *Burford*, "applies when there exists (1) a state created regulatory scheme which would be disrupted by federal court review and (2) a specially created forum with specialized competence in that particular area."

The Fourth Circuit addressed the issue of abstention this summer in *Browning-Ferris, Inc. v. Baltimore County, Maryland*, 774 F.2d 77 (4th Cir.1985). In that case BFI, owner-operator of a landfill, complained that county and state officials had arbitrarily and capriciously refused to renew the disposal permit for its privately owned landfill and sought relief under § 1983. The district court applied the doctrine of abstention announced in *Burford* and refused to hear the case. In affirming, the Fourth Circuit pointed out that there were pending state administrative proceedings that had been initiated by the state in order to deny BFI a permit. The court stated that the *Burford* requirement that a complex state regulatory scheme be involved in order for a district court to abstain was sufficiently present in this case, and "... [d]espite BFI's attempt to characterize the suit as a mere contract case, the federal court of necessity would become involved in the complexities of state land use control." In the case at bar, plaintiffs have pointed out that state law does not afford them the means for resolving disputes about wages or salaries. *See* Va. Code § 2.1–114.5:1.B(i) (1985) (nongrievable complaint committed solely to managerial discretion for resolution).

In *Cox v. Planning Dist. I Community Mental, Etc.*, 669 F.2d 940, 943 (4th Cir. 1982), the district court dismissed the action because plaintiff had petitioned the state court to stay enforcement of an arbitration award on the same day he had filed action in federal court. Agreeing that abstention was warranted, the Fourth Circuit pointed out that the status of Virginia law regarding an arbitration award was unsettled. However, it directed the district court to reinstate the case on its docket and stay the action pending disposition of the state court proceedings.

Plaintiffs, here, do not attack the validity of any Virginia statute, nor do they request this court to interpret any statute dealing with salaries of state employees. It is well established under Virginia law that before a court is justified in construing a statute, the statute must be unclear and ambiguous. "Virginia clings tenaciously to the proposition that when a statute is clear and unequivocal, general rules for statutory construction have no application." *Dennis v. County Board of Rappahannock County*, 582 F.Supp. 536, 540 (W.D.Va.1984). Plaintiffs have put in issue only defendants' actions pursuant to Va.Code §§ 2.1–114.2.B, 2.1–114.5.B, and 2.1–114.6 and have not questioned the plain meaning of these statutes. There being no dispute concerning state law, this court would not be intruding into a matter traditionally committed to the state's jurisdiction.

■ Applying these principles to the case at bar, this court finds abstention is not warranted and, therefore, a stay would be totally inappropriate in light of the absence of any pending state proceedings. Plaintiffs have implicated important constitutionally and federally protected rights and should not be denied the opportunity to litigate these issues on the chance that they may later bring suit in state court.

### IV.

Defendants first contend that this court lacks subject matter jurisdiction because the Eleventh Amendment bars any monetary claims against a state and/or persons sued in their official capacity. However, as plaintiffs point out, their suit is not against persons sued solely in their official capacities and sovereign immunity is not an issue.

The Supreme Court in *Scheuer v. Rhodes*, 416 U.S. 232, 236–238, 250, 94 S.Ct. 1683, 1693, 40 L.Ed.2d 90 (1974) held in part that the district court was wrong in dismissing the action against Rhodes, Governor of Ohio, based solely on the pleadings. The Court stated that

> ... since *Ex Parte Young*, 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] 123 (1908) it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he deprived another of a federal right under the color of state law ... [d]amages against individual defendants are a permissible remedy in some circumstances notwithstanding the fact that they hold public office.

(citations omitted.).

And in *Landman v. Royster*, 354 F.Supp. 1302, 1315–16 (E.D.Va.1973), though the suit was originally brought against defendants in their official capacity, the court stated that damages could be recovered from them personally but not from them in their official capacity. In making out their *prima facie* claim for damages, plaintiff must prove some actual conduct depriving him of his rights on the part of each defendant he seeks to hold personally liable.

■ Therefore, since plaintiffs lodge no complaint against the state and because consideration of upon whom liability could ultimately rest is premature, the Eleventh Amendment imposes no bar to plaintiffs' action. Because factual matters are still in dispute, this court will refrain from addressing what impact, if any, a judgment against defendants may have on the state itself.

■ Defendants next argue that this action is barred by Virginia's statute of limitations, Va.Code § 8.01–243 (1985). They contend that the cause of action accrued in 1974 which was the time plaintiffs first became aware of the conduct/policy about which they now complain. There is no federal statute of limitations applicable to suits arising under § 1983, therefore, federal courts must borrow the state statute of limitations that most closely fits this cause of action. It is generally recognized that this federal rule establishes as the time of accrual that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action. *Bireline v. Seagondollar*, 567 F.2d 260, 262 (4th Cir.1977), *Blanck v. McKeen*, 707 F.2d 817, 819 (4th Cir.), *cert. den.*, 464 U.S. 916, 104 S.Ct. 279, 78 L.Ed.2d 258 (1983).

■ However, the conduct which plaintiffs allege to be an unconstitutional denial of federally protected rights is repetitive—beginning in 1974 and continuing to this day. *See Perez v. Laredo Jr. College*, 706 F.2d 731, 733–34 (5th Cir.1983) for the proposition that:

> if the alleged statutory violation does not occur in a single moment but in a series of separate acts and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation and only those violations preceding the filing of the complaint by the full limitations period are foreclosed. Similarly if the statutory violation occurs as a result of a continuing policy, itself illegal, then the statute does not foreclose an action

aimed at the company's enforcement of the policy within the limitations period. That case involved a claim under § 1983 for alleged employment discrimination which was initially held time barred. On appeal the Fifth Circuit examined the complaint to determine whether plaintiff had made only mere conclusory allegations of a continuing wrong. Upon careful examination of plaintiffs' complaint in the case at bar, this court finds that plaintiffs have stated facts which indicate that the conduct alleged to be wrongful is continuing in nature by reason of the Virginia statutes, cited above, and defendants' actions. Therefore; the Virginia statute of limitations does not bar this action.

■ Defendants have forcefully argued that plaintiffs' allegations are insufficient, conclusory and fail to state a claim upon which relief can be granted, or, alternatively, that based on the record before this court defendants are entitled to judgment in their favor. This court finds merit in plaintiffs' allegations and finds that they have succeeded in pleading a legitimate claim under § 1983 and the Fourteenth Amendment. The complaint together with affidavits and other memoranda show that there are genuine issues of fact concerning the reason for the salary differential and the authority for paying it only to Northern Virginia troopers. These issues need to be fleshed out at trial. Therefore, the motion for summary judgment as to plaintiffs' claims invoking protected rights under the Fourteenth Amendment and § 1983 is overruled.

■ A review of the complaint, however, reveals that plaintiffs have alleged no valid federal conspiracy claim. In 1971 the Supreme Court articulated four elements a party must allege in order to establish a possible violation of § 1985(3):

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is ei-

ther injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), (as cited in *Waller v. Butkovich,* 605 F.Supp. 1137, 1143 (M.D.N.C.1985)).

Courts which have addressed complaints brought under § 1985(3) have placed great weight on the second element requiring that there be some racial, or perhaps otherwise class-based invidiously discriminatory animus. *See United Brotherhood of Carpenters and Joiners of America v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), and *Furka v. Great Lakes Dredge & Dock Co.,* 755 F.2d 1085 (4th Cir.1985). Neither the Supreme Court nor the Fourth Circuit has identified any classes other than racial or religious classes. In *Dotson v. Mountain Mission School, Inc.,* 590 F.Supp. 583, 587 (W.D.Va. 1984), this court stated, in part, that

based on a strict construction of the Act's legislative history, the conspiratorial reach of § 1985 does not include tortious acts against groups, ..., whose constituency is dependant on circumstances subject to ready change and whose character is quite different from classes based on race, ethnic origin, sex, religion, or political loyalty.

In this case defendants' alleged wrongful action is directed toward a class composed of troopers in the Fourth Division in Southwestern Virginia. The plaintiffs as a class possess none of the immutable traits or other characteristics which would entitle them to special protection under § 1985(3). Any animus that could possibly be directed toward them would be motivated by something other than a political, racial or economic status. *See Carpenters,* 463 U.S. 825, 837, 103 S.Ct. 3352, 3360 (1983). This court finds that the complaint fails to properly plead any legitimate claim of conspiracy due to plaintiffs' failure to satisfy the requisite element of class-based animus toward them. Summary judgment is war-

ranted for defendants upon the § 1985(3) claim against them.

Defendants' last basis for urging this court to dismiss is that venue is improper. Under 28 U.S.C. § 1404 it is generally recognized that "plaintiff's choice of forum should rarely be disturbed unless the balance is strongly in favor of defendant." *Bertnick v. Home Fed. Sav. & Loan Ass'n,* 337 F.Supp. 968, 970 (W.D. Va.1972). "The plaintiff has primary right to choose his forum and that selection is not to be easily overthrown. The decision of whether to transfer from one district court to another is in the discretion of the district judge." *Akers v. N & W Ry. Co.,* 378 F.2d 78, 80 (4th Cir.1967). In ruling on a motion to dismiss for improper venue, defendants bear the burden of showing that the balance of equities is in their favor; that judicial economy and convenience to all parties favor suit in another forum. This court finds that defendants have not shown this to be an inconvenient or improper forum requiring dismissal of this cause of action. Venue has been properly placed within the jurisdiction of this court sitting in the Abingdon Division.

## V.

An order will be entered granting summary judgment for defendants on plaintiffs' conspiracy claim under § 1985(3) and overruling defendants' motion for summary judgment on claims against all defendants for violations of plaintiffs' Fourteenth Amendment rights to due process and equal protection and for violations of rights pursuant to § 1983.

This court finds that plaintiffs have sufficiently pleaded facts of a substantial nature which indicate that there are genuine issues of material fact in dispute which make it necessary for the parties to proceed to trial.

The Clerk is directed to send certified copies of this Memorandum Opinion to counsel of record.