**KENTUCKIANS FOR THE COMMONWEALTH, INC., Plaintiff,**

v.

**Colonel John RIVENBURGH, District Engineer, U.S. Army Corps of Engineers, Huntington District, Lieutenant General Robert B. Flowers, Chief of Engineers and Commander of the U.S. Army Corp of Engineers, and Michael D. Gheen, Chief of the Regulatory Branch, Operations and Readiness Division, U.S. Army Corp of Engineers, Huntington District, Defendants.**

No. Civ.A. 2:01–0770.

United States District Court, S.D. West Virginia, Charleston Division.

Nov. 30, 2001.

Joseph M. Lovett, Lewisburg, WV, Joe F. Childers, Lexington, KY, James M. Hecker, Trial Lawyers for Public Justice, Washington, DC, for plaintiff.

K. Kasey Warner, U.S. Attorney, Michael L. Keller, United States Attorney's Office, Charleston, WV, Ruth Ann Storey, U.S. Department of Justice, Environment & Natural Resources Div., General Litigation Section, Washington, DC, Terry Clarke, U.S. Army Corps of Engineers, Office of Counsel, Huntington, WV, Steven E. Rusak, John C. Cruden, U.S. Department of Justice, Environment & Natural Resources Division, Environmental Defense Section, Washington, DC, for defendants.

W. Henry Lawrence, IV, Robert D. Pollitt, Richard L. Lewis, Steptoe & Johnson, Charleston, WV, for Intervenor-Defendant, Pocahontas Development Corporation.

Robert G. McLusky, James R. Snyder, Jackson & Kelly, Charleston, WV, for Intervenor-Defendant, Kentucky Coal Association.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are (1) Defendants' (the Corps') motion for change of venue, pursuant to 28 U.S.C. § 1404(a), to the Eastern District of Kentucky, and (2) motions by Kentucky Coal Association, Pocahontas Development Corporation, and AEI Resources, Inc. to intervene as defendants. For reasons discussed below, the Court **DENIES** the Corps' motion for change of venue. The motions of Kentucky Coal Association and Pocahontas Development Corporation to intervene are **GRANTED**.[1]

### I. FACTUAL AND PROCEDURAL BACKGROUND

This civil action alleges violations of Section 1344 of the Clean Water Act (CWA), the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 et seq., and Sections 553 and 706(2)(A) of the Administrative Procedure Act (APA). Plaintiff Kentuckians for the Commonwealth (KFTC) is a statewide organization with approximately three thousand members. KFTC's stated purposes include promoting social justice and quality of life for all Kentuckians by addressing, inter alia, problems of land and mineral use and ownership, and the participation of citizens in promoting democratic institutions. Corps officers Rivenburgh and Gheen are responsible for issuing permits for discharges of dredged and fill material under Section 404 of the CWA. Defendant Flowers supervises and manages all Corps' decisions and actions, including those under Section 404 and NEPA.

KFTC alleges the Corps, in violation of its statutory duties, authorized Martin County Coal Corporation (MCCC), pursuant to a Nationwide general permit (NWP) under Section 404 of the CWA, to fill over six miles of streams in Martin County, Kentucky with waste rock and dirt from surface coal mining activities. Plaintiff alleges the Corps had no authority under the CWA to permit disposal of waste rock from surface coal mining in streams. Alternatively, even if the Corps

---

1. The AEI Resources motion is not ripe.

had such authority, KFTC alleges it could not authorize that disposal (1) pursuant to an NWP rather than requiring an individual permit under the CWA, (2) without preparing an Environmental Impact Statement (EIS) under NEPA for the MCCC project and for NWP 21 [2] generally, (3) without analyzing measures required by Defendants' CWA regulations to avoid or minimize impacts on streams, and (4) without waiting for the United States Environmental Protection Agency (EPA) to complete proceedings under the CWA to veto that permit.

The Corps moved for a change of venue to the Eastern District of Kentucky. Plaintiff promptly responded. Defendants did not reply. More than a month has passed since Plaintiff's response and this motion is ripe for disposition.

## II. DISCUSSION

### A. Motion for Change of Venue

Title 28, Section 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under Title 28, Section 1391(b),

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

In *Just Wood Industries, Inc. v. United States Fidelity and Guaranty Co.*, 58 F.Supp.2d 699, 701 (S.D.W.Va.1999), this Court discussed general principles of venue transfer:

> It is well settled that the decision whether to transfer a matter to another district is committed to the sound discretion of the district court. *AFA Enter. Inc. v. Am. States Ins. Co.*, 842 F.Supp. 902, 908 (1994) (Haden, C.J.) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, [108 S.Ct. 2239, 101 L.Ed.2d 22] (1988)). District courts have greater discretion to transfer venue under 28 U.S.C. § 1404(a) than to dismiss on the grounds of forum *non conveniens*. *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253, [102 S.Ct. 252, 70 L.Ed.2d 419] (1981)).

> Motions for transfer of venue are to be adjudicated according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart*, 487 U.S. at 29, [108 S.Ct. 2239] (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, [84 S.Ct. 805, 11 L.Ed.2d 945] (1964)). To resolve a motion to transfer venue, a district court must "weigh in the balance a number of case-specific factors." *Id.*

Factors commonly considered in ruling on a transfer motion include:

> (1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice. *AFA*, 842 F.Supp. at 909 (citations omitted).

The burden of showing the propriety of transfer rests on the movant, most often the defendant. *Id.* (citations omitted). The plaintiff's choice of forum is accorded considerable weight. *Id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, [67 S.Ct. 839, 91 L.Ed. 1055] (1947)) (stating "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). Further, a transfer motion will be denied if it

---

**2.** NWP 21 is the Nationwide general permit under which surface coal mining activities may be approved.

would merely shift the inconvenience from the defendant to the plaintiff. *AFA*, 842 F.Supp. at 909 (citing *Van Dusen*, 376 U.S. at 622, [84 S.Ct. 805] (1964)). *Just Wood*, 58 F.Supp.2d at 701.

### 1. Plaintiff's choice of forum

The Corps asserts the "deference given to plaintiff's choice is entitled to less weight where there is little to connect the chosen forum with the cause of action." (Defs.' Mem. in Supp. at 7 (quoting *Glamorgan Coal Corp. v. Ratners Group PLC*, 854 F.Supp. 436, 438 (W.D.Va.1993)).) The Corps argues Plaintiff's choice of forum should receive no deference. It points out the surface mine operation, which is the immediate subject of the action, is located in eastern Kentucky. Resolution of the action may significantly affect the operations of two Kentucky coal operations corporations, the Kentucky coal industry, and the citizens of Kentucky. Defendants also contend the Kentucky environmental regulatory agencies that administer aspects of affected environmental programs will be affected, although they are not parties to the action.

Plaintiff responds that all decisions regarding this authorization were made by the Corps in this judicial district, at the Huntington District office in West Virginia. Defendants Rivenburgh and Gheen are assigned and located in this district, as are a substantial part of the events giving rise to the claim including the administrative record, although the property which is the subject of the action, the MCCC mine site, is indisputably sited in Kentucky. Accordingly, the action properly might have been brought in either this district or the Eastern District of Kentucky under the statute. 28 U.S.C. § 1391(b). The Corps' contention there is little to connect this forum with Plaintiff's cause of action will not bear close scrutiny.

### 2. Convenience of parties and witnesses

Plaintiff chose this forum and has no complaint about its convenience. As noted earlier, Defendants Rivenburgh and Gheen are located here at the Corps' district headquarters. Defendant Flowers is located in Washington, D.C. The Kentucky court in which

this action would be heard is in Pikeville, Kentucky, located 21 miles further from the Corps' office in Huntington than this courthouse.

The Corps acknowledges that because the two districts are situated approximately 120 miles from one another, "factors such as convenience to witnesses that in other cases might decidedly favor one jurisdiction over another do not weigh as heavily here." (Defs.' Mem. in Supp. at 8.) The Court agrees convenience of witnesses or parties is not determinative. As Plaintiff reports, the 100–mile subpoena power of both courts encompasses both the Huntington Corps office and the MCCC mine site near Inez, Kentucky. Neither party demonstrates one location or the other is particularly inconvenient for witnesses. Finally, both parties agree the administrative record is in Huntington, West Virginia so either forum is convenient in that regard.

### 3. Interest of Justice

Under Section 1404(a), the analysis then turns to the interest of justice. To determine which venue is favored by the interest of justice, "courts focus on several public interest considerations, including: (1) the transferee court's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *The Wilderness Society v. Babbitt*, 104 F.Supp.2d 10, 16 (D.D.C.2000).

The *Wilderness Society* court noted, "A court's knowledge and familiarity with the issues presented can weigh for or against transfer in the interest of justice." *Id.* at 16. As explained above, only federal law, and not the state law of Kentucky or any other state is involved, so the relative experience and expertise of the two district courts with regard to different state laws is not implicated.

This Court previously adjudicated an action similar to the instant action. In that recent litigation, the Corps entered into a Settlement Agreement under which that agency, together with the EPA, Office of Surface Mining, and the Fish and Wildlife

Service, agreed to prepare an EIS designed to minimize adverse environmental effects of excess spoil disposal sites in valley fills. *See Bragg v. Robertson*, 54 F.Supp.2d 653 (S.D.W.Va.1999) (accepting Settlement Agreement). The Corps also agreed, *inter alia*, to require individual, rather than nationwide, permits in watersheds of 250 acres or more. *Id.* Either a Kentucky or West Virginia federal court should be capable of interpreting and applying the relevant federal law. This factor is not determinative.

Neither party proposes the calendars or other processes and procedures in either judicial district offer relative benefits or difficulties that might affect the exercise of venue.

Concerning local interest, the Supreme Court observed, "There is a local interest in having localized controversies decided at home." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The Corps argues justice requires the transfer to Kentucky, based especially on the local interest, because that is where the impact of any judicial determination will be felt. The Corps lists a number of potentially affected state parties and entities: the economically important Kentucky coal industry, Kentucky state government including environmental regulatory agencies, and the waters of the state of Kentucky.

As Plaintiff responds, the Corps' argument ignores the gravamen of the Complaint as well as the scope of the Corps' authority and actions. While it is unquestionable the particular mine project in question is located in eastern Kentucky, the Corps' Huntington office oversees a district comprised of roughly half the state of Ohio, more than half of West Virginia, portions of eastern Kentucky and western Virginia, and a relatively small area in North Carolina. Plaintiff explains this is because Corps' boundaries are based on the watersheds of major rivers, rather than state lines. Mining activities taking place entirely in Kentucky at the MCCC mine site, located in the Big Sandy River watershed, will have implications downstream where the river forms the West Virginia/Kentucky boundary before flowing into the Ohio River.

Plaintiff's Complaint questions the decisions of federal actors applying wholly federal law in authorizing stream filling with waste rock from surface mining operations under Section 404 of the CWA. Plaintiff objects to such authorization both as waste disposal and because the authorization is made under a nationwide permit without comporting with necessary prerequisite and ancillary procedures, detailed above. In particular, Plaintiff alleges the Corps' authorization fails to consider the cumulative, regional environmental impacts of such activities, as required for general permits issued on a nationwide or regional basis.[3]

Corps' decisions applying federal law, made in this judicial district, thus affect the citizens, economy, coal industries, and state environmental regulation not only in Kentucky, but also in Ohio, West Virginia, Virginia, and North Carolina. It follows that the locus of the decision-making is a reasonable and fair venue to determine these federal issues. No particular state government nor regulatory regime is impacted more than any other; all should be treated equally under the applicable federal law. A single determination can be made by this Court in the judicial district in which the Corps has its headquarters and in which the Corps applies federal law to authorize stream filling in all five states. The issues are not local to Kentucky, but general to the entire Corps district, headquartered in West Virginia.

■ Plaintiff's chosen forum is also the district in which the Corps' decisions affecting application of federal law in the five-state region are made. As this Court has observed, "The venue transfer rule requires the

---

**3.** Plaintiff significantly notes the Huntington District approved 257 of the 306 NWP 21 permits issued nationwide in the year 2000. (Pl.'s Mem. in Opp'n, Ex. 1.) The same tables show all NWP 21 permits in the nation impacted a total of 460,575 linear feet of stream. Ninety-seven percent of stream length affected, or 449,896 linear feet, occurred in the Huntington district under NWP 21 permits authorized here. *Id.* Similarly, of the 13,907.41 acres impacted nationwide under NWP 21 permits, ninety-nine percent or 13,-755.1 acres are located in the Huntington district. *Id.* The figures suggest the issues Plaintiff raises are truly district-wide, and venue in the district where the authorizing decisions are made is equitable, as well as reasonable.

Court to balance two factors: convenience and justice." *Just Wood,* 58 F.Supp.2d at 702. When Plaintiff's choice of forum is added to the scale, it plainly tips in favor of venue in the Southern District of West Virginia. Accordingly, the Corps' motion for change of venue is **DENIED.**

### B. *Motions to Intervene*

Kentucky Coal Association (KCA), Pocahontas Development Corporation (PDC), and AEI Resources, Inc. (AEI) moved to intervene in this action. Plaintiff does not object to intervention by the first two entities. AEI's motion was filed November 23, 2001 and, as noted previously, is not yet ripe for disposition. Accordingly, AEI's motion will be held in abeyance.

■ Timely motions to intervene as a matter of right are permitted "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed.R.Civ.P. 24(a)(2). Our Court of Appeals has held that, to intervene as a matter of right, a movant must show " 'interest, impairment of interest, and inadequate representation.' " *In re Sierra Club,* 945 F.2d 776, 779 (4th Cir.1991) (quoting *Gould v. Alleco,* 883 F.2d 281, 284 (4th Cir.1989)). " '[T]he application satisfies Rule 24(a)'s third requirement if it is shown that representation of its interest 'may be' inadequate.' " *Id.* (quoting *United Guar. Residential Ins. Co. v. Philadelphia Savings Fund Soc'y,* 819 F.2d 473, 475 (4th Cir.1987) (quoting *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972))).

■ KCA is an association composed of members of the regulated industry. PDC is an owner and lessor of both surface and mineral rights, including the particular surface and mineral rights at issue in the instant action. The Court agrees both movants have interests in the action that are divergent from those named Defendants, who are regulators, such that representation of their inter-

ests may be inadequate. The Court **GRANTS** both motions to intervene as a matter of right. The Answer attached to each motion is **ORDERED** filed.

Intervenors have not represented that their respective interests are sufficiently diverse that each needs to present facts and legal positions individually. Accordingly, the Court **ORDERS** Intervenors to coordinate to avoid duplicative discovery, evidence, argument, pleadings, filings, and memoranda. Any departure from this Order will be allowed only after a just cause showing that Intervenors' divergent interests and positions require individual presentation.

### III. CONCLUSION

The Court **DENIES** the Corps' motion for change of venue and **GRANTS** motions by KCA and PDC to intervene as a matter of right as Defendants.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record by facsimile transmission and first-class mail and to publish it on the Court's website at http://www.wvsd.uscourts.gov.

