SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,

v.

CAPT. CRAB, INC., Edward R. Scharps, Lewis Leeds, Inter-Financial Consulting Corp., Joseph Lugo, Randolph Pace, Rooney Pace Inc., Martin Rothman, Defendants.

No. 86 Civ. 4785(PNL).

United States District Court,
S.D. New York.

Dec. 30, 1986.

David W. Stanley, John R. Hewitt, SEC, Washington, D.C. (Anne C. Flannery, Associate Regional Administrator, SEC, of counsel), for plaintiff.

Jonathan B. Reisman, Reisman & Bryn, Miami, Fla., for Capt. Crab, Inc.

Wallace L. Timmeny, Boothe, Prichard & Dudley, Washington, D.C., for Edward R. Scharps.

Richard H. Critchlow, Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, Miami, Fla., for Lewis Leeds & Inter-Financial Consulting Corp.

Franklin D. Ormsten, Ormsten & Evangelist, New York City, for Joseph Lugo.

Lewis D. Lowenfels, Tolins & Lowenfels, New York City, for Randolph Pace & Rooney Pace Inc.

Richard Reckson, Blake, Rome, Comisky & McCauley, Philadelphia, Pa., for Martin Rothman.

## MEMORANDUM AND ORDER

LEVAL, District Judge.

This is an enforcement action brought by the Securities and Exchange Commission (the "SEC") seeking permanent injunctive and other equitable relief against eight defendants: Capt. Crab, Inc., Edward R. Scharps, Lewis Leeds, Inter-Financial Consulting Corp., Joseph Lugo, Randolph Pace, Rooney Pace, Inc., and Martin Rothman. The complaint alleges various violations of the federal securities laws in connection with the offer and sale of securities of two related Florida corporations, Crab House, Inc. and Capt. Crab's Take-Away, Inc., which have since merged under the corporate name Capt. Crab, Inc. The alleged violations include market manipulation and misrepresentation in connection with public offerings.

Capt. Crab, Inc. and Martin Rothman have settled with the SEC. The remaining six defendants move to have this action transferred to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a) (1982), for convenience of the parties and witnesses and in the interest of justice.

*Background*

Capt. Crab, Inc. ("Capt. Crab") is a Florida corporation engaged in the operation and franchise of fast food and full service seafood restaurants. Capt. Crab became the successor corporation to Crab House, Inc. ("Crab House") and Capt. Crab's Take-Away, Inc. ("Take-Away") following the merger of Crab House into its subsidiary Take-Away and its corporate name change to Capt. Crab in June 1984.

Defendant Edward Scharps and an associate established Crab House in 1981 and Take-Away in 1982. In 1982 and 1983, Scharps supervised the operation of the corporation and its subsidiary and served as their chief public spokesperson. In 1982, he employed a New York brokerage firm to underwrite an initial public offering of Take-Away securities, and sent prospectuses to various brokers and analysts, including Randolph Pace at Rooney Pace, Inc. in New York. The initial public offering became effective on June 15, 1982, and further sales information was subsequently circulated among brokers and analysts. Information was also sent to national trade and financial publications representing that several franchise agreements had been signed.

On May 21, 1983, Take-Away filed a registration statement for a secondary offering of common stock. This offering was not publicized, but solicitation efforts were made in Ohio, Illinois, Georgia and Florida. The secondary offering became effective on July 21, 1983.

Defendant Lewis Leeds, a Miami resident and the manager of the Miami branch office of First Affiliated Securities ("FAS"), a San Diego based broker-dealer, made a market in Crab House and Take-Away securities in 1982 and 1983. Leeds, working on behalf of FAS, was responsible for selling 88% of the units sold in the public phase of the initial public offering, and for engaging broker-dealers to solicit purchases in Georgia and Ohio. Defendant Inter-Financial Consulting Corp. ("IFCC"), a Florida corporation owned and directed by Leeds, traded Take-Away securities and rendered financial consulting services to Crab House in 1983.

Defendant Rooney Pace, Inc., a New York corporation, is a broker-dealer with corporate headquarters in New York City and an office in Miami. Defendant Lugo, a Florida resident employed by Rooney Pace, Inc. in Miami, was principally responsible for Rooney Pace, Inc.'s making a market in Crab House and Take-Away securities in 1983. At all relevant times, Lugo was supervised by defendant Randolph Pace, president of Rooney Pace, Inc. and a New York resident. Lugo has since moved to New York.

*Discussion*

 Defendants move to transfer this action to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a) (1982). This provision allows a district court to transfer a civil action to any district court where the action "might have been brought," for the purpose of preventing "the waste 'of time, energy and money' and 'to protect litigants,

witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964) (quoting *Continental Grain Co. v. The F.B.L.—585,* 364 U.S. 19, 27, 80 S.Ct. 1470, 1475, 4 L.Ed.2d 1540 (1960)). Section 1404(a) is applicable to actions governed by the special venue provisions of the federal securities laws. *See, e.g., H.L. Green Co. v. MacMahon,* 312 F.2d 650, 652 n. 3 (2d Cir.1962), *cert. denied,* 372 U.S. 928, 83 S.Ct. 876, 9 L.Ed.2d 736 (1963).[1]

■ In deciding whether to transfer an action, the court should consider the convenience of parties and witnesses, the relative ease of access to sources of proof, and the practical problems of trying the case. *See Berg v. First American Bankshares, Inc.,* 576 F.Supp. 1239, 1241 (S.D.N.Y.1983); *Schneider v. Sears,* 265 F.Supp. 257, 263 (S.D.N.Y.1967) (Weinfeld, J.). Plaintiff's choice of forum will be disturbed only if defendants make a convincing showing that these factors weigh in favor of transfer. *Somerville v. Major Exploration, Inc.,* 576 F.Supp. 902, 908 (S.D.N.Y.1983).

■ The SEC conducted its investigation of this case from its home office in Washington, D.C., where the relevant files and documents remain. Staff members responsible for the litigation are also located in Washington. Acknowledging that the transportation of staff and files will be necessary whether this case is heard in New York or Florida, the SEC claims that it would be "far less expensive in time and money" to litigate in New York than in Miami (Mem. p. 13). Flights are shorter and more frequent between Washington and New York than between Washington and Miami. In addition, its New York office is a well-staffed regional office located across the street from the federal courthouse, while the SEC office in Miami is only a branch of the Atlanta regional office and is neither centrally located nor heavily staffed.[2]

The SEC further contends that transfer is inappropriate because "this action is nationwide in scope and not [a] parochial matter." (Mem. p. 17.) It argues that no forum will be ideal for all non-party witnesses because they are located throughout the country. It has supplied the names and likely testimony of witnesses it intends to call from California, Ohio, Illinois, Georgia, Pennsylvania, New Jersey and New York, including at least ten non-party witnesses within subpoena range of this court.

Defendants Scharps and Leeds reside and conduct business in Florida. IFCC is located in Florida. Capt. Crab is located in Florida, and though it is no longer a defendant in this action, it remains the primary source of evidence in this action. Lugo, currently a resident of New York,

---

1. The SEC brought this action under the venue provision of the Securities Exchange Act, 15 U.S.C. § 78aa (1982). It claims that special deference should, therefore, be given its choice of forum. *Cf. Lemberger v. Westinghouse Electric Corp.,* Fed.Sec.L.Rep. (CCH) ¶ 95,762 (E.D.N.Y. 1976) [Available on WESTLAW, DCTU database]. The purpose of this broad venue provision is to encourage private enforcement of the securities laws "by minimizing burdens on plaintiffs in civil suits." *Id.* at 90,742. Toward this end, § 78aa affords victims of securities fraud, such as the plaintiffs in *Lemberger,* "the widest possible number of choices of a district in which to sue." *Id.* As a federal regulatory agency, the SEC does not need the same inducement to enforce the securities laws. Although it receives the benefit of § 78aa in obtaining venue over defendants to initiate actions, the SEC's choice of forum is entitled to no more weight on a transfer motion than that of the plaintiff in an ordinary civil suit. *Securities & Exchange Commission v. First National Finance Corp.,* 392

F.Supp. 239, 242 (N.D.Ill.1975); *see also Securities & Exchange Commission v. Page Airways, Inc.,* 464 F.Supp. 461 (D.D.C.1978).

2. The convenience to the SEC in litigating near the situs of its investigation and staff personnel should be accorded some weight on a transfer motion. In *SEC v. Pattiz,* Fed.Sec.L.Rep. (CCH) ¶ 97,923 (S.D.N.Y.1981) [Available on WESTLAW, DCTU database], the SEC conducted its investigation in Washington and brought suit in New York. The defendant moved to transfer the action to Los Angeles, where the SEC had a major regional office. The hardships that the defendant argued supported transfer, however, were related more to the expected duration of the trial than its location. Noting that the SEC had chosen to bring suit in New York, the court concluded that the defendant "failed to show that he [would] be more inconvenienced by a trial in New York than the SEC [would] be by a trial in Los Angeles." *Id.* at 90,701.

lived and worked in Florida at the time the activities relevant to this action took place, and has joined the motion for transfer. Rooney Pace, Inc. and Randolph Pace, although both located in New York, are connected to this action in large part through the Miami branch office of Rooney Pace, Inc., and also join the motion for transfer. Defendants argue that they and their witnesses will be greatly inconvenienced by an action in New York and that transfer of this action to Florida will be beneficial to all those involved.

Defendants have given little or no description of what the expected testimony of their probable Florida witnesses will be, but claim that many of the non-party witnesses essential to their cases are located in Florida. Although the securities in question were traded publicly, with solicitations in Illinois, Ohio and Georgia, the activities upon which this action is based—the dissemination of allegedly false information (counts 1, 2, 3, 6, 8, 10, 14 and 16), the solicitation (count 4), the activities in furtherance of market manipulation (count 5), and the involvement of Rooney Pace, Inc. (counts 7 and 9)—transpired in the Southern District of Florida. Most sources of proof are also located in Florida, including the books and records of Crab House, Take-Away and Capt. Crab, records related to the franchise agreements, and the documents relating to the majority of sales and acquisitions of securities.

Also to be weighed in the interest of convenience and judicial economy is the existence of related actions in the transferee district. *Somerville v. Major Exploration, Inc.*, 576 F.Supp. 902, 908 (S.D.N.Y. 1983). There are currently three class action lawsuits pending in the Southern District of Florida which are based on the same set of circumstances as this action. The first was filed on June 27, 1986 on behalf of shareholders of Capt. Crab who purchased Crab House or Take-Away securities from August 1982 to September 1983 at prices allegedly inflated by defendants' stock manipulation scheme. The second was filed on July 8, 1986, against Capt.

Crab, Crab House, Take-Away and Scharps on behalf of shareholders who purchased securities from March 1982 to December 1984. The third, which was filed in the Northern District of Illinois against Capt. Crab, Scharps, Leeds, Rooney Pace, Inc., Pace, Rothman and others, was transferred to the Southern District of Florida on December 3, 1986, pursuant to § 1404(a).[3]

The SEC argues that since there can be no consolidation of this action with the pending class actions unless it consents, 15 U.S.C. § 78u(g), and it does not intend to do so (Mem. p. 22), the existence of the pending actions is not a factor to be considered in this motion to transfer. *See Dow Jones & Co. v. Board of Trade*, 539 F.Supp. 190, 193 (S.D.N.Y.1982) (pendency of related claims is relevant only when the transfer would permit consolidation). In *Berg v. First American Bankshares, Inc.*, however, the court stated that "[e]ven if it were improbable that the ... cases would be consolidated upon transfer ... the fact that they are intimately related remains a strong reason for transfer." 576 F.Supp. 1239, 1243–44 (S.D.N.Y.1983). Policy considerations favoring the litigation of related claims in one forum are the consolidation of pretrial discovery, the minimization of time and expense for parties and witnesses, and the reduction of inconsistent results. *See Wyndham Associates v. Bintliff*, 398 F.2d 614 (2d Cir.), *cert. denied*, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968). Those considerations are implicated here even if consolidation of actions is unlikely or impossible. *See Securities & Exchange Commission v. Page Airways, Inc.*, 464 F.Supp. 461 (D.D.C.1978); *Securities & Exchange Commission v. First National Finance Corp.*, 392 F.Supp. 239 (N.D.Ill.1975). Notwithstanding the SEC's refusal to permit consolidation of other trials with its action, the Florida court might, nonetheless, require that discovery in the various actions be conducted on a coordinated basis. Assignment of all the actions to a single judge may also result in substantial saving of judicial effort and reduction of likelihood of inconsistent results

---

**3.** Lugo is not named in these actions because he is in bankruptcy.

since similar legal issues are likely to be raised by motion in the various cases.

Not only the Florida residents, but also Rooney Pace, Inc. and Randolph Pace, must be in Florida to defend the class actions. Many of the same non-party witnesses will be called in all four actions. Most of the same sources of proof, many of which are found in Florida, will be used in all four actions. Transferring this action will enable the parties in all actions to coordinate pretrial motions and conferences, as well as the use of documents during discovery, thus minimizing the costs to on-going businesses. Finally, despite the large number of securities cases litigated in this district, *Manu International, S.A. v. Avon Products, Inc.*, 641 F.2d 62, 65 (2d Cir.1981), it is in the Florida courts that similar issues involving these defendants will be decided.

*Conclusion*

Defendants have clearly demonstrated that, on balance, the convenience of parties and witnesses and the interests of justice will be served by transfer of this action to the Southern District of Florida. Their motion accordingly is granted.

SO ORDERED.